UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GLORIA CALDERA,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | CASE NO.   C04-5094RJB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 2, 2005 |

Plaintiff, Gloria Caldera, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-five years old.[1] Tr. 40. She has an eleventh grade education and past work experience as a cook, Tupperware salesperson, and court services and file clerk. Tr. 22, 87.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

On March 29, 2001, plaintiff protectively filed an application for SSI benefits, alleging disability as of January 1, 1996, due to depression, anxiety, back pain, pain in the left part of her body, numbness in her hands, and high blood pressure. Tr. 21, 80, 86. Her application was denied initially and on reconsideration. Tr. 40-45, 48-50. Plaintiff requested a hearing, which was held on December 30, 2002, before an administrative law judge ("ALJ"). Tr. 378. At the hearing, plaintiff, represented by counsel, appeared and testified. Tr. 378-424.

On April 10, 2003, the ALJ issued a decision finding plaintiff not disabled. Tr. 35-36. Specifically, the ALJ found in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of depression, an anxiety disorder, a personality disorder, obesity, alcohol abuse, and arthritis with occasional gout and fasciitis;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified, but significant range of light work, had no past relevant work, and was able to perform her past job as a file clerk on a full-time basis; and

(5) at step five, although plaintiff's limitations did not allow her to perform the full range of light work, using Medical-Vocational Rule 202.18 as a framework for decision-making, she could perform a significant number of jobs in the national economy.

Tr. 35-36. Plaintiff's request for review was denied by the Appeals Council on December 30, 2003, making the ALJ's decision the Commissioner's final decision. Tr. 5-7; 20 C.F.R. §§ 416.1481.

On February 24, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #2). In her opening brief, plaintiff argues that decision should be reversed and remanded to the Commissioner for an award of SSI benefits, or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ erred in finding plaintiff could perform her past work as a file clerk;

(b) the ALJ erred in not obtaining the testimony of a vocational expert at step five of the disability evaluation process;

(c) the ALJ erred in relying on Social Security Ruling ("SSR") 85-15; and

(d) the ALJ erred in evaluating the opinions of plaintiff's treating psychiatrist and examining and non-examining psychologists.

REPORT AND RECOMMENDATION
Page - 2

In its response to plaintiff's opening brief, defendant agrees it would be appropriate to reverse the ALJ's decision, but argues this matter should be remanded to the Commissioner for further administrative proceedings to reconsider plaintiff's vocational capabilities. Specifically, defendant admits that at step four of the disability evaluation process, the ALJ erroneously relied on work plaintiff has done that properly cannot be considered to be past relevant work. Defendant further admits that the ALJ should have obtained testimony from a vocational expert regarding plaintiff's nonexertional limitations.

In her reply brief, plaintiff narrows her request for relief to a reversal of the ALJ's decision with a remand for further administrative proceedings. Plaintiff, however, further requests, particularly in light of defendant's failure to rebut many of the arguments contained in her opening brief, that the court also make certain specific findings regarding the ALJ's errors to help guide the Commissioner on remand. For the reasons set forth below, the undersigned agrees, and recommends that the court grant plaintiff's request and that it reverse and remand the ALJ's decision to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   Plaintiff's Prior Job as a File Clerk Does Not Constitute Past Relevant Work

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. If, at step three of this evaluation process, a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related

activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. at *2. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> I conclude that the claimant retains the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for six hours in an eight-hour period. The claimant is able to sit for six hours in an eight-hour period. She can occasionally climb ladders, stoop, and crawl. The claimant can frequently climb stairs, balance, kneel, and crouch. She can perform simple routine tasks, but should not work directly with the public.

Tr. 32. Based on this residual functional capacity assessment, the ALJ concluded plaintiff "could return to her past work as a file clerk on a full time basis" as it generally is performed in the national economy. Tr. 33. The ALJ went on to state:

> As noted previously, since the claimant received pay for only part of the hours that she worked for the court, her job as a court services and file clerk arguably did not constitute substantial gainful activity. While I believe that her work falls in the area of work that is not presumptively substantial gainful activity, it can be argued the other way. I find, therefore, that it is inappropriate to treat this employment as past relevant work despite the fact that it was performed on a full time basis. Thus, I find that for purposes of this decision, the claimant has no past relevant work and I will continue to the final step in the sequential evaluation. Nevertheless, her full time work, part paid and part volunteer ended for reasons unrelated to disability and is evidence of an ability to engage in work full time.

Id.. Somewhat contradictorily, however, the ALJ also found that while plaintiff had no past relevant work, her medically determinable impairments did not prevent her from performing her past work as a file clerk on a full time basis. Tr. 35.

Plaintiff argues this court should find she has no past relevant work as a file clerk. Plaintiff bases her

REPORT AND RECOMMENDATION
Page - 4

argument on the ALJ's finding that she has no past relevant work in general, the irreconcilability of that finding with the ALJ's contradictory finding that she can perform her past job as a file clerk, the evidence in the record concerning her ability (or rather lack thereof) to perform that job, and defendant's admission that the ALJ erroneously relied on work plaintiff has done in the past that properly cannot be considered past relevant work.

Although the ALJ did find plaintiff capable of performing her past job as a file clerk, the ALJ also clearly found she had no past relevant work. In addition, defendant has admitted the ALJ erred in relying on that job in that it does not constitute past relevant work. The undersigned thus finds that plaintiff's past job as a file clerk is not past relevant work. Accordingly, because step four requires the ALJ to consider only a claimant's "past relevant work," on remand the Commissioner shall proceed to step five of the disability evaluation process. See 20 C.F.R. §§ 416.920(e), 416.960(b).

II.   The ALJ Improperly Evaluated the Opinions of Plaintiff's Mental Health Providers

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a

1 treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
2 legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the
3 ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
4 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain
5 why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
6 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

     In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Magallanes, 881 F.2d at 75. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

     Plaintiff argues that the ALJ erred in evaluating the medical opinions in the record regarding her mental impairments, and that the Commissioner should re-evaluate those opinions on remand. First, with respect to David Lischner, Ph.D., plaintiff's treating psychiatrist, the ALJ found as follows:

> Although Dr. Lischner is a treating psychiatrist, I do not assign significant weight to the functional limitations he opined. Dr. Lischner assessed a [global assessment of functioning] GAF [score] of 55, which reflects moderate limitations. However, he then opined that the claimant had marked difficulties with social functioning and extreme limitations with concentration, persistence, or pace. I note these limitations are not consistent with the claimant's performance on mental status examination or with her daily activities. I note that Dr. Lischner acknowledged that the claimant's complaints occurred in the context of noncompliance with medications, conflicts with her daughter, and the death of her father. There are also some internal inconsistencies in Dr. Lischner's reports. He first indicated that the claimant denied auditory or visual hallucinations, then contradicted this and stated that the claimant reported seeing things (Exhibit 11Fp18). I note that the claimant repeatedly denied auditory or visual hallucinations elsewhere.

Tr. 32-33. Plaintiff asserts these are not legally sufficient reasons for rejecting Dr. Lischner's findings that she had many serious work-related mental impairments. The undersigned agrees.

     The ALJ states the marked limitations Dr. Lischner found (Tr. 256, 282-83, 295) are not consistent with her mental status examination or daily activities, but does not set forth what those inconsistencies are.

REPORT AND RECOMMENDATION
Page - 6

Although plaintiff's complaints may have occurred in the context of noncompliance with medications and personal difficulties, there is no indication that, and the ALJ made no findings as to whether, Dr. Lischner was unqualified to take those factors into consideration in evaluating and treating plaintiff. Indeed, the record shows that Dr. Lischner was aware of these issues. Tr. 279-81, 368-70. In addition, the ALJ gave no explanation as to why the GAF score with which Dr. Lischner assessed plaintiff, outweighed the other more specific findings contained in his reports.

With respect to the alleged inconsistencies in Dr. Lischner's reports concerning plaintiff's auditory or visual hallucinations, or lack thereof, in early September 2002, Dr. Lischner reported as follows:

> She denies auditory or visual hallucinations. When I asked her about visual hallucinations she says that she sometimes sees things from the past in her own life.

Tr. 280. However, Dr. Lischner made no finding at that time or elsewhere in his reports that plaintiff had or did not have such hallucinations. Tr. 254-57, 280-96, 368-70. In other words, Dr. Lischner merely was reporting what plaintiff had told him regarding whether or not she was experiencing hallucinations. Thus, that plaintiff may have denied having auditory or visual hallucinations elsewhere in the record also does not reflect adversely on Dr. Lischner's credibility.

Plaintiff next argues the ALJ failed to give legally sufficient reasons for rejecting the opinion of Michael Clark, Ph.D., an examining physician. Regarding plaintiff's ability to function, in mid-June 2001, Dr. Clark opined in relevant part as follows:

> She did appear to have the ability to perform simple tasks, but her problems with requiring frequent reassurance may limit her ability to perform even simple tasks in a repetitive manner. I suspect because of her psychiatric illness, she would have problems completing detailed and complicated tasks.
>
> She described having no problems with supervisors, co-workers, or the public in the past and based upon her interactions with me and clinic staff today, I suspect that this is indeed the case. However, because of her psychiatric symptomatology, particularly her Axis II pathology [borderline personality disorder], I suspect she would have difficulty performing work activities on a consistent basis without additional supervision to provide the additional level of support and reassurance which she has apparently become accustomed to.
>
> Likewise, because of her illness, she might have difficulty maintaining regular attendance in the work place and dealing with the usual stress encountered in competitive work.

Tr. 159-60.

With respect to Dr. Clark's opinion, the ALJ stated:

> I assign some weight to Dr. Clark's opinion. However, I note that Dr. Clark's conclusions regarding the claimant's functional limitations are not entirely consistent

REPORT AND RECOMMENDATION
Page - 7

with her ability to work for a year and a half despite her impairments. Tr. 32. Plaintiff asserts that her work activity during this period consisted of a half-time paid job and half-time volunteer position (Tr. 22), and thus does not establish that she can perform in a competitive work environment. Plaintiff further asserts the fact that she did some filing and escorted children to and from, and sat with them in, court (Tr. 388-89), does not show she is capable of performing simple, repetitive tasks or work on a consistent basis without additional supervision. The undersigned agrees. The ALJ was required to, but did not, set forth any analysis stating how plaintiff's prior work/volunteer experience was "not entirely consistent" with the limitations found by Dr. Clark.

Daniel M. Neims, Psy.D., also a examining psychologist, found plaintiff to be significantly limited in her ability to perform a number of mental functional activities. Tr. 308-09, 315. With respect to Dr. Neims' opinion, the ALJ found as follows:

> I do not assign significant weight to Dr. Neims's [sic] opinion regarding the claimant's functioning as it is not well supported by the documentary record. Dr. Neims opined that the claimant had fair to poor ability to relate to co-workers and poor or no ability to interact with supervisors. However, the claimant denied problems with supervisors or co-workers in her job as a court service and file clerk (Exhibit 4Fp6). Dr. Neims opined that the claimant had marked difficulties maintaining social functioning. However, she meets friends at a tavern, lives with her fiancé, and cared for her granddaughter during the period at issue. Dr. Neims opined that the claimant had at least three repeated episodes of decompensation of extended duration and cited the claimant's overdose in August of 1999. However, I note that the claimant did this in response to her fiancé leaving and only remained in the hospital overnight. She reported feeling better the following morning and was released. I further note that the claimant continued to work for approximately nine more months following this, at which point she stopped due to a conflict of interest.

Tr. 33. Plaintiff argues the ALJ's reasons for rejecting the opinion of Dr. Neims regarding her limitations in her ability to function socially are not an adequate basis upon which to reject the other significant limitations found by Dr. Neims. The undersigned agrees.

Dr. Neims, for example, opined that plaintiff had: a fair (defined as being "seriously limited, but not precluded") ability to follow work-rules, use judgment and function independently; and a poor or no ability (defined as being "[n]o useful ability to function") to deal with work stressors and maintain attention and concentration. Tr. 308-09. Dr. Neims also found plaintiff moderately limited in her activities of daily living and in maintaining concentration, persistence or pace. Tr. 315. The ALJ did not discuss, let alone provide specific and legitimate reasons for rejecting these limitations. As such, the ALJ erred.

III.     The ALJ Should Have Obtained the Testimony of a Vocational Expert

REPORT AND RECOMMENDATION
Page - 8

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original). If the claimant "has significant non-exertional impairments,"[2] however, reliance on the Grids is not appropriate. Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

Plaintiff argues the ALJ should have obtained the testimony of a vocational expert because the ALJ: (1) found she had a "severe" mental impairment; (2) found she had a moderate deficit in concentration; and (3) accepted the opinions of Thomas Clifford, Ph.D., and Carla van Dam, Ph.D., the two non-examining consulting psychologists in the record. Defendant concedes the ALJ should have obtained the testimony of a vocational expert, although does not address the specific arguments raised by plaintiff. For the reasons set forth below, the undersigned agrees with those arguments.

Plaintiff first argues that the fact that the ALJ found she had a "severe" mental impairment at step two of the disability evaluation process, indicates she had significant non-exertional impairments. At step two, the ALJ must determine if an impairment is "severe". Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v.

---

[2]"Non-exertional" impairments or limitations are those "other than the strength demands" of a particular job, including pain, mental impairments, and manipulative, postural and environmental limitations. 20 C.F.R. § 416.969a(c); see also Tackett, 180 F.3d at 1102.

REPORT AND RECOMMENDATION
Page - 9

Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect [her] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290. In other words, the mere fact that plaintiff was found to have a "severe" mental impairment at this step of the disability evaluation process does not in itself establish she had significant non-exertional impairments for purposes of step five.[3] On the other hand, plaintiff correctly points out that the ALJ did find she had moderate limitations in her activities of daily living, in her social functioning, and in her concentration, persistence or pace. Tr. 30. As the term "moderate" generally falls somewhere between "mild" and "marked," it would appear that such limitations could be expected to have a significant impact on plaintiff's ability to work.

Lastly, plaintiff argues the opinions of Dr. Clifford and Dr. van Dam required the ALJ to obtain the testimony of a vocational expert. Drs. Clifford and van Dam found plaintiff to be moderately limited in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace. Tr. 246. They also found her to be moderately limited in her ability to work in coordination with or proximity to others, respond appropriately to changes in the work setting, set realistic goals, and make plans independently of others. Tr. 250-51. With respect to the opinions of Dr. Clifford and Dr. van Dam, the ALJ found in relevant part as follows:

> I assign substantial weight to the findings of Dr. van Dam and Dr. Clifford. . . . Their conclusions are consistent with other doctors whose opinions I give weight to and who

---

[3] Plaintiff argues that in Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001), the Ninth Circuit recognized that vocational expert testimony is required at step five whenever a claimant has a severe mental impairment at step two. However, this is not what the Court of Appeals actually held. In Edlund, the Ninth Circuit merely found in relevant part that because the ALJ did not provide sufficient reasons for rejecting the findings of the claimant's examining psychologist, the ALJ erroneously found the claimant to be not disabled at step two, and therefore failed to properly consider the effect claimant's mental health impairments had on his ability to work at steps three and five. Id. Thus, the Ninth Circuit did not state that a finding of severity at step two alone is sufficient to require the testimony of a vocational expert at step five.

Plaintiff also cites to Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998), in which the Ninth Circuit did state that because the claimant's limitations included non-exertional limitations, the Commissioner could not "at step five, rely exclusively on the grids," and the testimony of a vocational expert was required. However, the Court of Appeals also stated that "application of the grids is inappropriate where a claimant's work capacity is *significantly diminished* beyond that caused by an exertional impairment." Id. (citing Bapp v. Bowen, 802 F.2d 601, 605-06 (2nd Cir.1986)) (emphasis added). In other words, Reddick appears to require that the record show something more than the mere *de minimis* finding at step two in order to trigger the duty to obtain vocational expert testimony at step five. See also Tackett, 180 F.3d at 1102-1103.

have evaluated her and assessed her symptoms and functioning.

Tr. 33. Thus, because the ALJ did not expressly reject any of the above limitations found by Drs. Clifford and van Dam, and because those limitations could be expected to have a significant impact on plaintiff's ability to perform work, the ALJ should have called a vocational expert at step five.

IV.   <u>The ALJ Improperly Relied on Social Security Ruling 85-15</u>

Plaintiff argues the ALJ improperly relied on Social Security Ruling 85-15, 1985 WL 56857, at step five of the disability evaluation process. The undersigned agrees. In finding that reliance on the Medical-Vocational Guidelines as a decision-making framework to be proper, the ALJ stated in relevant part as follows:

> The Medical-Vocational Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations. The evidence supports a finding that the claimant can perform simple routine tasks and should have only limited public contact. She can occasionally climb ladders, stoop, and crawl. The claimant can frequently climb stairs, balance, kneel, and crouch.
>
> Social Security Ruling 85-15 states that the basic mental demands of competitive, remunerative, unskilled work include the abilities to understand, carry out and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting on a sustained basis. The evidence supports a finding that the claimant retains these abilities.

Tr. 34. SSR 85-15, however, is not applicable to cases where the claimant is claiming both exertional and non-exertional impairments. <u>See</u> <u>Roberts v. Shalala</u>, 66 F.3d 179, 183 (9th Cir. 1995) ("SSR 85-15 provides guidance only for cases in which the claimant asserts 'solely nonexertional impairments.'") (citing SSR 85-15); <u>see also</u> <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980-81 (9th Cir. 1997). Because plaintiff is claiming both exertional and non-exertional impairments, the ALJ erred in relying on SSR 85-15.

V.   <u>This Matter Should Be Remanded For Further Administrative Proceedings</u>

The court may remand a case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Id.</u>; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain as to whether plaintiff is capable of performing other work at step five of the disability evaluation process, this case should be remanded for further administrative proceedings. In particular, on remand, the Commissioner shall re-evaluate the medical opinions in the record regarding plaintiff's mental impairments and obtain the testimony of a vocational expert.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 2, 2005**, as noted in the caption.

DATED this 9th day of August, 2005.

Karen L. Strombom
United States Magistrate Judge